# United States District Court
# Central District of California

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington corporation<br><br>Plaintiff,<br><br>v.<br><br>OSCAR RIVERA and DOES 1-10,<br><br>Defendants. | Case No. 2:17-cv-07027-ODW(JPRx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [45]** |

## I. INTRODUCTION

Presently before the Court is Plaintiff Microsoft Corporation's Motion for Default Judgment. ("Mot.," ECF No. 45.) For the following reasons, the Court **GRANTS** Microsoft's Motion for Default Judgment and issues a permanent injunction restraining Rivera's infringement of Microsoft's trademarks and copyrights.[1]

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. BACKGROUND

### A. Factual Background

Microsoft is in the business of developing, advertising, marketing, distributing, and licensing computer software programs. (Compl. ¶13, ECF No. 1.) Rivera, among others, is alleged to have sold counterfeit Microsoft software and product activation keys decoupled from the software they were authorized to activate. (*Id.* ¶ 27.)

Between November 10, 2016, and March 17, 2017, a Microsoft Corporation investigator conducted three test purchases of Microsoft software subscriptions from online marketplaces. (*Id.* ¶ ¶ 38, 46, 51.) The seller, "orz152," was identified as Rivera. (*Id.* ¶ 38.) The Microsoft investigator paid Rivera through PayPal. (*Id.* ¶¶ 38, 46, 51.) Rivera provided the Microsoft investigator with instructions for accessing and installing the Microsoft software along with usernames, passwords, and product keys. (*Id.* ¶¶ 39, 47.)

After each test purchase, the Microsoft investigator received parcels in the mail bearing the return address of Rivera or one of his alleged co-conspirators. (*Id.* ¶¶ 40, 47, 54.) The parcels enclosed DVDs containing usernames and passwords for subscription accounts and counterfeit Microsoft products. (*Id.* ¶¶ 40, 49, 54.) Microsoft holds valid copyrights and trademarks on the products Rivera is alleged to have illicitly distributed to the Microsoft investigator and Microsoft did not authorize Rivera to distribute these products. (*Id.* ¶¶ 45, 50, 55, 60–62.)

As a result, Microsoft seeks injunctive relief against Rivera to prevent him from conducting his alleged fraud scheme. (Mot. 20–22.)

### B. Procedural Background

Microsoft filed its Complaint on September 22, 2017. (Compl., ECF No. 1.) Rivera was served personally pursuant to Fed. R. Civ. P. 4(e) on October 12, 2017. (Proof of Service, ECF No. 19.) After Rivera's failure to answer the Complaint, Microsoft filed a Request to Enter Default against Rivera on January 23, 2018. (ECF No. 30.) The Clerk entered default against Rivera on January 23, 2018. (ECF No.

34.)

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 55(b), a Court may grant default judgment after the Clerk enters default under Rule 55(a). *See PepsiCo Inc., v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). A district court has discretion whether to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, a court must consider several factors, including: the possibility of prejudice to plaintiff; the merits of plaintiff's substantive claim; the sufficiency of the complaint; the sum of money at stake; the possibility of a dispute concerning material facts; whether the defendant's default was due to excusable neglect; and the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). If the allegations sufficiently establish liability, the court must then determine the "amount and character" of the relief that should be awarded. *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 394 (C.D. Cal. 2005).

### IV. DISCUSSION

As a threshold matter, the Court must determine whether it has jurisdiction over this proceeding before addressing if Microsoft has met the procedural requirements for default judgment. The Court must then examine whether the *Eitel* factors weigh in favor of granting default judgement before addressing the relief entitled to Microsoft, if any.

**A. Jurisdiction**

Before addressing Microsoft's request for entry of default judgment, the Court

must determine whether it has jurisdiction over the parties and the subject matter. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court may exercise subject matter jurisdiction over the parties under 28 U.S.C. §§ 1331 and 1338 because Microsoft alleges Rivera violated the Lanham Act and Copyright Act. (Compl. ¶ 8.) Since Rivera was personally served in California, and is presently domiciled here, the Court has personal jurisdiction over the parties. (Compl. ¶ 9.) *Burnham v. Sup. Ct.*, 495 U.S. 619 (1990); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) Consequently, the Court's jurisdiction is proper.

### B. Procedural Requirements

Before a court can enter default judgment, the requesting party must satisfy the procedural requirements set forth in Rule 55 of the Federal Rules of Civil Procedure, as well as the Local Rules of this district. *PepsiCo*, 238 F. Supp. 2d at 1174. Central District of California Local Rule 55–1 requires the movant to submit a declaration establishing: (1) when and against whom the default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, an incompetent person, or exempt under the Servicemembers' Civil Relief Act; and (4) that the defaulting party was served with notice, if required by Fed. R. Civ. P. 55(b)(2). *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014); C.D. Cal. Local Rule 55-1.

In accordance with Fed. R. Civ. P. 55 and Local Rule 55-1, by declaration, Microsoft's attorney identified the Complaint and established that the Clerk of the Court entered default against Rivera on January 23, 2018. (Decl. of James Harlan Corning ¶ 6, ECF No. 42.) The Declaration further confirmed that Rivera is neither a minor nor an incompetent person, nor is Rivera exempt under the Servicemember's Civil Relief Act. (*Id*. ¶ 7–8.) Finally, Microsoft provided the court with notice that Rivera has not appeared in this action, and, as such, notice of default judgement is unnecessary under Rule 55(b)(2), as referenced by Local Rule 55-1(e). (*Id*. ¶ 9.) Accordingly, the Court finds that Microsoft complied with all the procedural

requirements.

### C. Microsoft's Motion for Default Judgment

The Court finds that the *Eitel* factors favor default judgment. The Court will discuss each factor in turn.

#### 1. First *Eitel* Factor: Microsoft Would Suffer Prejudice if Default is Not Entered

The first *Eitel* factor considers whether Microsoft will suffer prejudice if default judgment is not entered. *PepsiCo*, 238 F. Supp. 2d at 1177. When a defendant fails to appear and defend their claims, the plaintiff would be without recourse and suffer prejudice unless default judgment is entered. *Id*.

Here, Rivera failed to appear to contest this allegation. Without a default judgment, Microsoft would be left without recourse and suffer prejudice for the damages incurred as a result of Rivera's conduct. Accordingly, the first *Eitel* factor weighs in favor of granting default judgment.

#### 2. Second and Third *Eitel* Factor: Microsoft's Claims are Meritorious and Sufficiently Pleaded

The second and third *Eitel* factors address the merits and sufficiency of plaintiff's claims pleaded in the complaint. *Eitel*, 782 F.2d at 1471–72.

##### i. Copyright Infringement

Computer programs are "tangible mediums of expression" entitled to copyright protection. *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 776 (9th Cir. 2006) (quoting *Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 524–25 (9th Cir. 1984)). To prove copyright infringement, Microsoft must establish "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

Here, Microsoft presented a Certificate of Registration from the United States Copyright Office demonstrating ownership of a valid copyright in Office 2016. (Compl., Ex. 2.) Such a demonstration of ownership constitutes prima facie evidence of the validity of the copyright. *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003). Since Rivera has not appeared to rebut this showing, the Court concludes that Microsoft owns a valid copyright in Office 2016. Further, it is undisputed that Rivera copied Office 2016 to DVDs, which were then impermissibly sold and delivered to the Microsoft investigator. (*Id*. ¶¶ 38–41, 46–55.) Accordingly, Microsoft has sufficiently pleaded a meritorious copyright infringement claim.

### ii. Contributory Copyright Infringement

To prevail on a claim of contributory copyright infringement, a plaintiff must establish: (1) direct infringement; (2) that defendant had knowledge of the direct infringement; and (3) that defendant intentionally induced, encouraged or materially contributed to the direct infringement. *See MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *see also A&M Records*, *Inc.,* 239 F.3d at 1019.

Here, it is undisputed that Rivera's customers have unwittingly infringed Microsoft's copyrights by downloading and installing protected Microsoft software without authorization or right under law. (Compl. ¶ 72; Mot. 16.) Further, Microsoft has pleaded facts sufficient to support the conclusion that Rivera had knowledge of his customers' direct infringement. (*Id*. ¶¶ 38–41, 46–55.) Specifically, upon each test purchase, Rivera directed the Microsoft investigator to download the file or provided the Microsoft investigator with a link to download the file. (Compl. ¶¶ 38, 47, 52.) Finally, it is undisputed that Rivera materially contributed to his customers' direct infringement. (*Id*. ¶ 72.) Specifically, Rivera advertised, sold, and distributed decoupled product keys for Office 2016, which the Microsoft investigator used to download and install Microsoft's copyrighted software. (*Id*. ¶¶ 27, 38–41, 46–55.) But for Rivera's conduct, that infringement would not have occurred. Accordingly,

Microsoft has sufficiently pleaded a meritorious claim for contributory copyright infringement.

### iii. Trademark Infringement

"To be liable for trademark infringement under the Lanham Act, a person must (1) use in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007); 15 U.S.C. § 1125(a)(1).

Here, Rivera impermissibly advertised and sold counterfeit Microsoft products on a "popular online marketplace." (Compl. ¶¶ 38, 46, 51.) Further, Rivera impermissibly used Microsoft trademarks to advertise and promote the sale of counterfeit Microsoft products. (*Id*. ¶ 80; Mot. 17.) Finally, such a misleading use of Microsoft trademarks would likely confuse customers into believing that they are purchasing legitimate Microsoft products, which they are not. (Compl. ¶ 80; Mot. 17.) Accordingly, Microsoft has sufficiently pleaded a meritorious claim for trademark infringement.

### iv. False Designation of Origin

The Lanham Act creates civil liability for

> [a]ny person who, on or in connection with any goods or services . . . uses in commerce any word . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1).

To prevail on its claim of false designation of origin, a plaintiff "must show that 1) [the defendant] made false or deceptive advertisements and representations to customers; 2) those advertisements and representations actually deceived a significant

portion of the consuming public; and 3) [the plaintiff] was injured by [the defendant's] conduct." *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 257 (9th Cir. 1995).

Here, it is undisputed that Rivera advertised the counterfeit products as authentic, licensed Microsoft software by using Microsoft's name, marks, and visual design. (Compl. ¶¶ 38, 46, 51, 87–88.) Further, actual confusion is presumed if the plaintiff can prove the defendant intentionally deceived the consumers. *Telecredit Serv. Corp. v. Elec. Transaction Corp.*, 974 F.2d 1343 (9th Cir. 1992). It is undisputed that Rivera intentionally engaged in his fraud scheme to deceive the consuming public as to the authenticity of the Microsoft software. (Compl. ¶ 88.) Consequently, Rivera has failed to rebut this presumption of actual confusion, so the second element is satisfied. Finally, Microsoft has suffered injury "by way of diverted sales and the dilution of its goodwill with its customers" because of Rivera's false advertising. (Mot. 18.) Accordingly, the Court finds that Microsoft has sufficiently pleaded a meritorious claim for false designation of origin.

Accordingly, the second and third *Eitel* factors weigh in favor of granting default judgment.

### 3. Fourth *Eitel* Factor: The Sum of Money at Stake Weighs in Favor of Default Judgment

The fourth *Eitel* factor balances "the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *Pepsico*, 238 F. Supp. 2d at 1176. Stated otherwise, the Court is required to assess whether the recovery sought is proportional to the harm caused by the Rivera's conduct. *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).

Here, Microsoft seeks narrowly tailored injunctive relief without monetary damages. (Mot. 18.) Such relief is proportional to the harm caused because Plaintiff only seeks to prevent Rivera from continuing his illicit distribution of Microsoft's products. (*Id.*) Accordingly, the fourth *Eitel* factor favors entry of default judgement.

### 4. Fifth *Eitel* Factor: There is no Possibility of Disputed Fact

The fifth *Eitel* factor examines whether material facts are disputed. *Eitel*, 782 F.2d at 1471–72. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Television Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Here, because Rivera defaulted, Microsoft's facts supporting its claims are undisputed. Accordingly, the fifth *Eitel* factor favors entry of default judgment.

### 5. Sixth *Eitel* Factor: The Defendant's Default is Not Due to Excusable Neglect

The sixth *Eitel* factor considers whether Rivera's default was due to excusable neglect. *Eitel*, 782 F.2d at 1471-72.

Here, Rivera was properly served according to Fed. R. Civ. P. 4(e) on October 12, 2017, and the Proof of Service was filed with the Court. (ECF No. 18.) Thus, the possibility of excusable neglect is remote. Accordingly, the sixth *Eitel* factor favors entry of default judgment.

### 6. Seventh *Eitel* Factor: Policy for Deciding on the Merits Does Not Preclude Default Judgment

Finally, the seventh *Eitel* factor reflects the policy that "cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "a decision on the merits [is] impractical, if not impossible" when a defendant fails to answer the plaintiff's complaint. *PepsiCo Inc.*, 238 F. Supp. 2d at 1177.

Here, a decision on the merits is not possible since Rivera did not respond to the complaint. Accordingly, the seventh *Eitel* factor favors entry of default judgment.

Since the *Eitel* factors weigh in favor of granting default judgment, Microsoft is entitled to default judgment against Rivera.

### C. Relief Sought

Having determined that Microsoft's Motion for Default Judgment should be granted, the Court now turns to Microsoft's measure of relief. Microsoft requests that

the Court impose a permanent injunction against Rivera to prevent future illicit distribution of Microsoft products. (Mot. 19.) Injunctive relief is authorized to prevent copyright infringement and trademark violations under 17 U.S.C. § 502(a) and 15 U.S.C. § 1116(a), respectively. "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Sys. Corp. v. Peak Computer*, 991 F.2d 511, 520 (9th Cir.1993). To justify injunctive relief, a plaintiff must demonstrate that: 1) it has suffered an irreparable injury; 2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; 3) the equities tip in the plaintiff's favor; and 4) the injunction serves the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). For the following reasons, Microsoft has satisfied each of the required elements.

### 1. Irreparable Harm

Rivera copied, sold, and distributed copyrighted Microsoft software and decoupled product activation keys, which defrauded Microsoft and its customers, infringed on Microsoft's intellectual property rights, and harmed Microsoft's brand and goodwill. As owner of the copyrighted software, Microsoft has the right to choose how, when, and where it is reproduced and distributed. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1218 (C.D. Cal. 2007). Rivera violated that right. Absent an injunction, Rivera's conduct may continue indefinitely, leading to irreparable harm.

### 2. Inadequate Remedy at Law

Given the profitable nature of Rivera's fraudulent scheme, such conduct will likely continue to harm to Microsoft's brand and goodwill. Only an injunction will adequately prevent future violations of Microsoft's copyright. *See Apple, Inc. v. Pystar Corp.*, 673 F. Supp. 2d 943, 949–50 (N.D. Cal. 2009). Accordingly, monetary damages are inadequate.

### 3. Balance of Equities & Public Interest

Rivera has no legitimate interest in continuing to violate Microsoft's copyright. *See Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997) (quoting *Triad Sys. Corp. v. Southeastern Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995), *superseded by statute on other grounds as recognized in Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1158 (9th Cir. 2011)) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration…"). Further, as previously mentioned, absent an injunction Rivera is free to continue to defraud the consuming public and Microsoft may continue to lose profits and goodwill. For these reasons, the equities tip in Microsoft's favor and the public interest is served by entering an injunction. Accordingly, the Court **GRANTS** Microsoft's request for an injunction and enjoins Rivera from further violating Microsoft's copyright.

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Microsoft's Motion for Default Judgment. (ECF No. 45.) The Court shall issue judgment.

**IT IS SO ORDERED.**

April 16, 2019

                                        **OTIS D. WRIGHT, II**
                                  **UNITED STATES DISTRICT JUDGE**